UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

——

LEON PERCIVAL,

              Plaintiff,                Case No. 2:16-cv-83

v.                                  Honorable Robert Holmes Bell

UNKNOWN STUHLER, et al.,

              Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Stuhler, Conners, Eicher, Benoit, Woods, Washington, O'Brien, and Wink.  The Court will serve the complaint against Defendant Golladay.

**Discussion**

I.    Factual allegations

Plaintiff Leon Percival, a state prisoner currently incarcerated at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officers Unknown Stuhler, Unknown Conners, Unknown Eicher, Unknown Benoit, Unknown Golladay, and Unknown Wink.  Plaintiff also names Warden Jeffrey Woods, MDOC Director Heidi Washington, and Hearing Officer Unknown O'Brien as Defendants.

In Plaintiff's complaint, he alleges that Defendants Golladay, Benoit, Cusick, Stuhler, Wink, and Eicher, as well as other individuals not named as Defendants in this case, established a custom or practice whereby, as a sanction for minor and major misconducts, Plaintiff was prevented from relieving himself of bodily waste and from obtaining drinking water except at the top of the hour.  Plaintiff alleges that this occurred on several occasions during November and December of 2015, as well as on four occasions in January of 2016.  Plaintiff also states that even when he is not on toplock sanction, he is denied access to the bathroom during "count" for approximately one hour four times per day, despite the fact that the actual count is typically done within five minutes. Plaintiff claims that level 2 prisons allow bathroom breaks during count, usually approximately twenty minutes after the completion of count.  In addition, Plaintiff claims that some prisons have toilets in the cells, so that bathroom access is not an issue during count.  Plaintiff claims that Defendant Woods is aware of the fact that his access to the bathroom is being restricted on a daily basis.

Plaintiff claims that he suffers from a medical condition called "Rabdo Myolitis," which means that his organs and muscles discharge blood and other fluids into his urine when he

does not drink enough water or when he undergoes strenuous activity.  Plaintiff states that when he does not consume enough water, his urine becomes dark and reddish in color and he experiences fatigue and joint pain.  Plaintiff states that as a result of having this condition, he is subject to kidney failure.

Plaintiff claims that the above Defendants sentenced him to toplock in every case, rather than loss of privileges, when they know that toplock is more severe.  Plaintiff claims that Defendant Woods "directed, authorized, approved, and encouraged" the custom and practice of low level corrections officers writing, reviewing, adjudicating, and enforcing the minor misconduct process.  In addition, Defendant Woods denies nearly 100% of misconduct appeals.

Plaintiff claims that Defendant Washington altered MDOC policy in order to allow each warden to determine whether prisoners on toplock should be allowed to attend group religious services.  Plaintiff states that Defendant Woods does not allow prisoners on toplock to attend group religious services and that Plaintiff has been prevented from attending services on five or six occasions as a result of this policy.  Defendant Washington also changed MDOC policy to allow prisoners to receive more time on toplock for various misconduct violations.

Plaintiff specifically alleges that on December 10, 2012, Plaintiff was charged with a major misconduct for assault and battery on Officer Osborn and was found guilty on December 17, 2012.  On December 19, 2012, Plaintiff was found to be a threat to the physical safety of staff.  On May 12, 2014, Plaintiff was charged with smuggling, when a letter he wrote was placed in the outgoing mail by another prisoner, who was known as C.B.  This letter was intercepted and read.  The letter informed the addressee of ways to make money by bringing tobacco, heroin, or marijuana to the Brooks Facility.  The letter further described how contraband could be thrown over the fence

in an area where there was a known breach of security. The envelope contained visiting applications for another prisoner, known as S.B., who would retrieve the contraband. The name of S.B.'s brother and phone number were also referenced. C.B. accepted payment for mailing the envelope, but lacked sufficient funds for postage, which prompted the opening of the envelope. S.B. was upset about being exposed and C.B. claimed not to know the contents of the letter, blaming Plaintiff. S.B. and C.B. belong to the same "religious organization" and other members of the organization were also upset about the fact that the breach in security at Brooks had been exposed. Plaintiff was placed on toplock until his hearing, after which he was sentenced to 30 days loss of privileges.

On June 20, 2014, Plaintiff and S.B. got into a fight. On July 7, 2014, a prisoner punched Plaintiff in the face, referencing S.B. and the religious organization to which S.B. belonged. Plaintiff was found guilty of fighting. S.B. was transferred from Brooks to URF and Plaintiff was transferred to Kinross on June 10, 2015, and then to URF on November 2, 2015. Plaintiff states that Officer Osborn works at URF and has threatened to do physical harm to Plaintiff. On January 23, 2016, Plaintiff was ordered to move to the West Side of URF where S.B. resides. Plaintiff claims that the move was ordered by Defendant Golladay, who conspired with other prison officials. The West Side offers more privileges than the East Side and moves to that side are reserved for prisoners who have been misconduct free. Plaintiff claims that the only reason for the move was so that Plaintiff would be near "S.B.," who wanted to assault Plaintiff, and that the motive was to retaliate against Plaintiff for his litigation activities. Plaintiff refused to move and was given a class I misconduct. Plaintiff was found guilty and was given 10 days toplock from February 3, 2016, until February 13, 2016. During this time, Plaintiff was only allowed to use the restroom at the top of each hour.

-4-

Plaintiff claims that Defendants' conduct violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory, nominal, and punitive damages, as well as equitable relief.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

-5-

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants sentenced him to toplock in every case where he was convicted, rather than to the less restrictive loss of privileges. Plaintiff complains that Defendant Woods authorized low level officers to write misconduct tickets and claims that Defendant Woods denies nearly 100% of misconduct appeals. Plaintiff appears to be claiming that his placement on toplock, as a result of his misconduct convictions, violated his Fourteenth Amendment due process rights.

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). In *Sandin v. Conner,* 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 486-87; *see also Jones v. Baker,* 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown,* 62 F.3d 789, 790-91 (6th Cir. 1995).

-6-

Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden–Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that mere placement in administrative segregation, and placement for a relatively short period of time, do not require the protections of due process. *Rimmer-Bey,* 62 F.3d at 790-91; *see Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). The Sixth Circuit has also held, in specific circumstances, that confinement in segregation for a relatively long period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). *But cf. Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest).

-7-

Even where a liberty interest is shown, the due process claim "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch,* 494 U.S. 113, 126 (1990). The Supreme Court has indicated that "[p]rison officials must engage in some sort of periodic review of the confinement of . . . inmates [in segregation]." *Hewitt,* 459 U.S. at 477 n.9. "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements." *Id.* However, the decision to continue confinement must be supported by "some evidence." *Superintendent v. Hill,* 472 U.S. 445, 454 (1985). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Harris,* 465 F. App'x at 484. In short, where an inmate's confinement in segregation implicates a liberty interest, he is entitled to a "periodic review of his confinement, supported by some evidence or indicia of reliability." *Id.* at 485; *see also Selby*, 734 F.3d at 559-60 (holding that the mere formality of holding reviews is not sufficient; whether a given process is meaningful and adequate is a question of fact).

The confinement complained of by Plaintiff in this case was being placed on toplock. According to MDOC Policy Directive 03.03.105 (eff. date 04/09/12):

> MMM. A prisoner on toplock is restricted to his/her own cell, room, or bunk and bunk area. For purposes of this section, "bunk area" is defined as the prisoner's bunk and the floor area next to the prisoner's bunk which extends to the mid-point between the adjacent bunks on all sides. If a prisoner is housed in a multiple occupancy cell or room, toplock may consist of placement in a cell/room which is designated as a toplock cell/room. If placed in such a cell/room, the prisoner shall be given the same access to his/her property which would be provided if housed in his/her own cell/room and shall be treated in all other respects as being on toplock.
>
> NNN. A prisoner on toplock shall not leave his/her cell, room, or bunk area for any reason without specific authorization from the appropriate staff person. The prisoner may be deprived of use of

his/her television, radio, tape player, and portable media player while on toplock as provided in the facility operating procedure.

OOO. Prisoners shall be released from toplock for regular showers, visits, medical care (including individual and group therapy), school, and law library. The Warden or designee may authorize prisoners on toplock to go to the dining room, work assignments, and/or other specified activities, including group religious services; prisoners not released from toplock for store and Securepak orders shall have store and Securepak orders delivered to them. Prisoners on toplock shall have a minimum of one hour per day of out-of-cell activity, which may include all out-of-cell activities authorized by this paragraph.

In addition, Policy Directive 03.03.105D states that toplock is not to exceed 30 days for a Class I Misconduct, and not to exceed 5 days for Class II and III Misconducts.

A review of the pertinent policy directives clearly shows that toplock does not rise to the level of an atypical and significant hardship. Moreover, Plaintiff concedes that he received hearings on his misconduct tickets. Therefore, because Plaintiff does not have a liberty interest in remaining free of toplock, and because he received hearings on each of his misconduct tickets, his due process claims are properly dismissed.

Plaintiff claims that while on toplock, he was not allowed to attend group worship. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-

2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).   To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1.     does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2.     are there alternative means of exercising the right that remain open to prison inmates;

3.     the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4.     whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors.  *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational").   If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest.

*Flagner*, 241 F.3d at 484 (citations omitted).  It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest.  *Id.*

In this case, Plaintiff was placed on toplock as a result of being found guilty of both major and minor misconducts.  As noted above, toplock can last either 5 days, or 30 days, depending on the type of misconduct conviction.  In his complaint, Plaintiff alleges that he was placed on toplock numerous times, but the only sentence specifically described by Plaintiff was a 10 day stint on toplock for a Class I misconduct in February of 2016.  Plaintiff states that he missed group services on 5 or 6 occasions.  However, Plaintiff fails to specifically allege the nature of his religious beliefs, whether group worship is an integral part of those beliefs, or whether Plaintiff was even a regular attendant at group services when not on toplock.  Moreover, Plaintiff does not allege that there were no alternative means available for him to exercise his unspecified religious beliefs. Accordingly, Plaintiff fails to state a claim for a violation of his First Amendment rights.

Finally, Plaintiff claims that his confinement on toplock violated the Eighth Amendment because he was only allowed access to the toilet and to water once each hour pursuant to the "top of the hour" rule.  Plaintiff asserts that he suffers from a condition, "Rabdo Myolitis," which requires him to stay well hydrated and which makes it difficult for him to hold his urine and feces for an entire hour.  Plaintiff states that Defendants disregarded his medical condition and denied him access to the bathroom except at the top of each hour.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const.

amend. VIII.  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

In this case, Plaintiff fails to allege facts showing that the named Defendants were aware of his medical need to use the bathroom more than once each hour, and that they denied him access to the bathroom despite this knowledge. Nor does Plaintiff allege that he received a medical accommodation for unfettered access to the bathroom based on his alleged diagnosis. Because Plaintiff has failed to allege facts showing that prison officials were deliberately indifferent to a diagnosed serious medical need, this claim is properly dismissed.

Plaintiff also alleges that Defendant Golladay violated his First Amendment right to be free from retaliation when he attempted to transfer Plaintiff to the West side of URF, so that Plaintiff would be near prisoner S.B., who wanted to assault Plaintiff. Plaintiff claims that the motivation for the attempted transfer was to retaliate against him for his litigation activities. The Court concludes that Plaintiff's retaliation claim against Defendant Golladay is nonfrivolous and may not be dismissed on initial review.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Stuhler, Conners, Eicher, Benoit, Woods, Washington, O'Brien, and Wink will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Golladay.

An Order consistent with this Opinion will be entered.


Dated: August 31, 2016                              /s/ Robert Holmes Bell
                                                    ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE